Michael F. SCHMIDT, Plaintiff,

v.

E. Packer WILBUR, E.P.W. Properties, Inc., Wilbur & Co., Inc., E.P. Wilbur & Co., Inc., Realty International Corp., Thomson McKinnon Securities, Inc., and Prudential Bache Securities, Inc., Defendants.

No. 91–70859.

United States District Court, E.D. Michigan, S.D.

Oct. 4, 1991.

Michael F. Schmidt and Maurice A. Borden, Troy, Mich., for plaintiff Michael F. Schmidt.

Eric J. Pelton, David Deromedi, Detroit, Mich., and Bradley J. Schram, Bloomfield Hills, Mich., for defendants E. Packer Wilbur, E.P.W. Properties, Inc., Wilbur & Co., Inc., and E.P. Wilbur & Co., Inc.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION OF DEFENDANTS E. PACKER WILBUR, E.P.W. PROPERTIES, INC., WILBUR & COMPANY, INC. AND E.P. WILBUR & COMPANY, INC. FOR DISMISSAL OF PLAINTIFF'S COMPLAINT

GADOLA, District Judge.

### I.

#### Background Facts

This action was commenced in the Circuit Court of Wayne County, Michigan, and was subsequently removed to the United States District Court for the Eastern District of Michigan on the basis of diversity of citizenship.

Defendants E. Packer Wilbur, E.P.W. Properties, Inc., Wilbur & Company, Inc. and E.P. Wilbur & Company, Inc. have moved for dismissal of plaintiff's complaint, claiming that a court in Michigan, state or federal, has no personal jurisdiction over them. Defendants E. Packer Wilbur and E.P.W. Properties, Inc. also request dismissal of plaintiff's action on the basis of alleged lack of proper service upon them.

The litigation concerns claims by the plaintiff, a Michigan resident, which arose from his purchase of an investment interest (a "unit" in a limited partnership). Plaintiff alleges that he was induced to purchase the limited partnership interest by intentional misrepresentations, negligent misrepresentations and fraud, and further claims that there have been breaches of contract by the defendants.

The limited partnership in which plaintiff purchased an interest, and thereby himself became a limited partner, is known as "The Crossings at Oakbrook Limited Partnership" (hereinafter "Oakbrook"). The business and operations of Oakbrook involve ownership and operation of an office building in Oak Park, Illinois.

Oakbrook was organized in Connecticut and maintains its offices in that state.

E. Packer Wilbur is a resident of Connecticut.

E.P.W. Properties, Inc., Wilbur & Company, Inc. and E.P. Wilbur & Company, Inc. are corporations which were neither incorporated in the State of Michigan nor maintain their principal places of business within the State of Michigan.

E. Packer Wilbur and E.P.W. Properties, Inc. are the general partners in Oakbrook.

Wilbur & Company, Inc. was an initial limited partner in Oakbrook.

The role of E.P. Wilbur & Company, Inc. is not altogether clear from the pleadings on file, but it is not a general partner in Oakbrook.

Thomson McKinnon Securities, Inc. is a corporation which was not incorporated in Michigan and does not have its principal place of business in Michigan, but which did have offices in Michigan. This corporation acted as a designated agent for Oakbrook in soliciting, in Michigan, plaintiff's purchase of an investment interest in Oakbrook. Thomson McKinnon Securities, Inc. is not a party to defendants' motion for dismissal.

The respective roles of defendants Realty International Corporation and Prudential–Bache Securities, Inc. are not pertinent to resolution of the issues raised by this motion, and they are not parties to the motion.

The limited partnership agreement by which the Oakbrook limited partnership was created was initially executed September 5, 1985 and was subsequently amended on October 8, 1985 and again on November 12, 1985. The agreement provided, in part, as follows:

## Article VI

### Rights, Powers and Obligations

### of the General Partner

Section 6.01. Control of Business. The business and assets of the Partnership shall be *controlled solely by the general partners.*

Except as expressly otherwise set forth elsewhere in this Agreement, *the General Partners* (acting for and on behalf of the Partnership), in extension and not in limitation of the rights and powers given by law or by the other provisions of this Agreement, *shall, in its sole discretion, have the full and entire right, power and authority in the management of the Partnership business to do any and all acts and things necessary, proper, convenient or advisable to effectuate the purpose of the partnership.* Without limiting the foregoing grant of authority but subject to the other provisions of this Agreement, the General Partners, in their capacities as General Partners, shall have the right, power and authority, acting for and on behalf of the Partnership, to do all acts and things set forth in Section 6.02. *All decisions made for and on behalf of the Partnership by the General Partners shall be binding upon the Partnership.* (Emphasis supplied).

Plaintiff claims that his subscription agreement, by which he purchased an investment unit in Oakbrook, and was admitted to the limited partnership on November 12, 1985, was solicited from him in Michigan on October 18, 1985 and was signed by him in Michigan and that the solicitation was accomplished by Thomson McKinnon Securities, Inc., acting as agent of E. Packer Wilbur, E.P.W. Properties, Inc., Wilbur & Company, Inc., and E.P. Wilbur & Company, Inc.

The "Confidential Private Placement Memorandum" presented to plaintiff in Michigan by Thomson McKinnon Securities, Inc. constituted an offer of an interest in the Oakbrook limited partnership. This solicitation listed the general partners of Oakbrook as E. Packer Wilbur and E.P.W.

Properties, Inc. and stated that "[t]he principal office of each General Partner is 308 Center Street, Southport, Connecticut 06490." This memorandum further provided as follows:

The General Partners will appoint Thomson McKinnon Securities Inc. ("Thomson" or the "Placement Agent") as agent for placement of the Units offered hereby on a "best efforts" basis. Thomson shall have the right to appoint other National Association of Securities Dealers, Inc. ("NASD") broker-dealers as additional sales agents, subject to the approval of the General Partners, and will act as representative of such agents.

A "Broker–Dealer Distribution Agreement" of October 5, 1985 between the Oakbrook Limited Partnership and Thomson McKinnon Securities, Inc. stated:

The partnership is a Connecticut limited partnership with E.P.W. Properties, Inc., a Delaware Corporation, and E. Packer Wilbur, as the general partners.

This "Broker–Dealer Distribution Agreement" of October 5, 1985 designated Thomson McKinnon Securities, Inc. as Oakbrook's "exclusive agents to find subscribers for the units". The agreement was signed, on behalf of Oakbrook, by E. Packer Wilbur as general partner, and by E. Packer Wilbur as a representative of E.P.W. Properties, Inc., being the other general partner.

The defendants-movants seemingly concede, as indeed they should, that Thomson McKinnon Securities, Inc. acted as agent for the Oakbrook limited partnership in soliciting plaintiff's purchase of an investment unit in Oakbrook, but deny that it acted as agent for E. Packer Wilbur, E.P.W. Properties, Inc., Wilbur & Company, Inc. or E.P. Wilbur & Company, Inc. These defendants correctly point out that plaintiff has not seen fit to name Oakbrook limited partnership as a defendant.

Plaintiff, on the other hand, contends that Thomson McKinnon Securities, Inc., in soliciting plaintiff's investors in Michigan, acted as agent for E. Packer Wilbur, E.P.W. Properties, Inc., Wilbur & Company, Inc. and E.P. Wilbur & Company and

therefore, in fact, that those other defendants were engaged in the solicitation of plaintiff in Michigan and in the various alleged misrepresentations, frauds and breaches of contract.

Defendants E. Packer Wilbur, E.P.W. Properties, Inc., Wilbur & Company, Inc. and E.P. Wilbur & Company, Inc. contend that the court does not have personal jurisdiction over them. They claim that they have not conducted any business in Michigan and are not, therefore, subject to personal jurisdiction of the United States District Court for the Eastern District of Michigan in this litigation, which was removed to federal court from the Circuit Court of Wayne County, Michigan.

Defendants E. Packer Wilbur, E.P.W. Properties, Inc., Wilbur & Company, Inc. and E.P. Wilbur & Company, Inc. contend also that they have not been properly served with process. They therefore assert that plaintiff's complaint against them should be dismissed, on the basis that this court has no jurisdiction over them and on the further basis of lack of proper service.

The plaintiff, on the other hand, contends that these defendants conducted business in Michigan through their agent, defendant Thomson McKinnon Securities, Inc. (out of which business arose the claims of plaintiff) and also maintains that service on these defendants was proper.

## II.

### Applicable Statutes and Court Rules

The Michigan Revised Limited Partnership Act provides, in pertinent part at Section 303 "—a limited partner is not liable for the obligations of a limited partnership unless the limited partner is also a general partner or, in addition to the exercise of rights and powers as a limited partner, the limited partner takes part in the control of the business." Michigan Compiled Laws, § 449.1303.

Section 403 of that same Michigan statute provides as follows:

Sec. 403. (a) Except as provided in this act or in the partnership agreement, a general partner of a limited partnership has the rights and powers and is subject to the restrictions of a partner in a partnership without limited partners.

(b) Except as provided in this act, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to persons other than the partnership and the other partners. Except as provided in this act or in the partnership agreement, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to the partnership and to the other partners.

Michigan Compiled Laws § 449.1403. Both Michigan and Connecticut have passed the Revised Uniform Limited Partnership Act of 1976. See Conn.Gen.Stat.Ann. §§ 34-9 to -38q.

Under Michigan law, general personal jurisdiction over individuals may be based upon presence within the state when served with process, domicile within the state or consent to state jurisdiction. Michigan Compiled Laws § 600.701. It does not appear that there is any basis in this suit for the assertion of general personal jurisdiction over E. Packer Wilbur by a court in Michigan.

General jurisdiction over corporations is governed by Michigan Compiled Laws, § 600.711 which provides for such general jurisdiction over corporations which are incorporated under the laws of Michigan, or consent to Michigan jurisdiction, or carry on a continuous and systematic part of their general business within the state. None of these factors are present in this case and therefore this court does not have a basis for asserting general jurisdiction over E.P.W. Properties, Inc., Wilbur & Company, Inc. or E.P. Wilbur & Company, Inc.

Limited personal jurisdiction over individuals by Michigan courts is governed by Michigan Compiled Laws § 600.705:

Sec. 705. The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this

state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee or other officer of a corporation under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support or child custody.

Limited personal jurisdiction over corporations by Michigan courts is governed by Michigan Compiled Laws § 600.715:

Sec. 715. The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporations arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

If this court has jurisdiction over any or all of these movant defendants, it is clear that it must be on the basis of limited jurisdiction pursuant to the above-cited Michigan Compiled Laws §§ 600.705 and 600.715.

Michigan Court Rule 2.201(C)(3) provides as follows:

A partnership—having a distinguishing name may be sued in its partnership—name, in the names of any of its members designated as such, or both.

Michigan Court Rule 2.105(C) provides: Service of process—on a—limited partnership may be made by

(1) serving a summons and a copy of the complaint on *any general partner;* or

(2) serving a summons and a copy of the complaint on the person in charge of a partnership office or business establishment and sending a summons and a copy of the complaint by regular mail, addressed to *a general partner* at his or her usual residence or last known address. (Emphasis provided).

### III.

### *Conclusions of Law*

#### A. Personal Jurisdiction

■ There are two requirements which must be satisfied in order for a court to assert personal jurisdiction over a defendant. First, there must be a statutory basis for the jurisdiction. Second, the statutory grant of jurisdiction must comport with due process. The statutory basis for asserting limited personal jurisdiction in this case, if any, over the individual defendant, E. Packer Wilbur, is Michigan Compiled Laws § 600.705(1) which confers jurisdiction over an individual transacting any business within the state, with reference to such acts of transacting business only.

The statutory basis for jurisdiction, if any, over the corporate defendants is Michigan Compiled Laws § 600.715(1) which confers jurisdiction over a corporation transacting any business within the state, also with reference only to such acts of transacting business.

■ Defendants E. Packer Wilbur and E.P.W. Properties, Inc. are general partners in the Oakbrook limited partnership. Defendants Wilbur & Co. and E.P. Wilbur & Co. are corporations in which, apparently, E. Packer Wilbur is a principal; they are not, however, general partners of the Oakbrook limited partnership. Defendant Wilbur & Co. Inc., was the initial limited partner. The court will not distinguish between the corporate general partner and the individual general partner of the limited partnership. Moreover, for purposes of this opinion, the court concludes that judicial pronouncements on Michigan Compiled Laws § 600.715(1) apply with equal force to Michigan Compiled Laws § 600.705(1).

The Michigan Supreme Court has interpreted Michigan Compiled Laws § 600.-715(1) as follows: "[t]he word 'any' means just what is says. It includes 'each' and 'every'.... It comprehends the slightest." *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971). After quoting this language from *Sifers* the Sixth Circuit stated in *Lanier v. American Board of Endodontics,* 843 F.2d 901, 906 (6th Cir.1988), that "if defendant conducted even the slightest act of business in Michigan, the first statutory criterion for personal jurisdiction under section 600.715(1) is satisfied." For example in *Kiefer v. May,* 46 Mich.App. 566, 208 N.W.2d 539 (1973), the court recognized that even phone and mail contact may amount to transacting business. In *Evans Tempcon, Inc. v. Index Industries, Inc.,* 778 F.Supp. 371 (W.D.Mich.1990) the court noted that "[t]his standard [for determining if business transacted in Michigan] is easily met; it has led to the conclusion that the only real limitation placed on this [long arm] statute is the due process clause.... *Kief-*

*er v. May,* 46 Mich.App. 566, 571 [208 N.W.2d 539] (1973)."

■ The defendants contend that it was the Oakbrook limited partnership which conducted business in the state and not the general partners. The defendants argue that for purposes of personal jurisdiction there is a legal difference between a limited partnership and its general partners. The plaintiff, on the other hand, argues that the general partners are the limited partnership and that the limited partners simply provided capital to fund the venture. The court believes that to accept defendants' argument would be to exalt form over substance. The case of *Wallace v. Frank,* 662 F.Supp. 876 (E.D.Mich.1987), cited to the court by plaintiff, is directly on point. In *Wallace,* the court held that a limited partnership, and its general partners, were subject to personal jurisdiction on the basis of contacts with the forum state caused by the limited partnership. Defendants' argument is entirely in conflict with the provisions of Michigan Court Rule 2.201(C)(3) which specifies that a suit against a limited partnership can be brought against the partnership in its partnership name, or against any of its general partners, designated as such.

In the instant case it is undisputed that "Thomson McKinnon Securities, Inc., by and through its agents and employees in Rochester, Michigan, contacted [plaintiff] and advised [plaintiff] of offer made by E. Packer Wilbur, E.P.W. Properties, Inc., Wilbur & Company, Inc., and E.P. Wilbur & Co., Inc., to sell 140 units in The Crossings at Oakbrook Limited Partnership." Plaintiff's affidavit at pp. 2–3. It is further undisputed that Oakbrook "appoint[ed] Thomson McKinnon Securities Inc. as *agent* for placement of the Units offered hereby on a 'best efforts' basis." Confidential Private Placement Memorandum at p. 7.

Because the court rejects defendants' arguments that the general partners are shielded from personal jurisdiction by the limited partnership, it finds that the general partners transacted business in the state of Michigan through the limited partner-

ship. Accordingly, the court finds that E. Packer Wilbur and E.P.W. Properties, Inc., as general partners in Oakbrook and on behalf of Oakbrook, transacted business in Michigan sufficient to find a statutory basis for personal jurisdiction. Further, the court finds that, as required by the statutes, the claim "aris[es] out of the act or acts which create [the jurisdiction]." Michigan Compiled Laws §§ 600.705(1) and 600.-715(1).

■ A statutory finding of personal jurisdiction does not, however, conclude the inquiry:

> Even though the defendant's activities may satisfy the initial "two-step" analysis of *Lanier, i.e.* that the defendant's conduct constituted the "transaction of any business" and that plaintiff's cause of action arose out of that "transaction of any business", thus meeting the requirements of Michigan's long-arm statute, nevertheless, the statute "must also pass constitutional muster as applied in this case".

*Telecast, Inc. v. Pacific Cablevision*, 731 F.Supp. 1319, 1321 (E.D.Mich.1990) (citation omitted). To satisfy the requirements of due process a defendant must have "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denkla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Additionally, a finding of personal jurisdiction must comport with notions of "fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

■ In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985), the court noted that where a defendant "has created 'continuing obligations' between himself and residents of the forum, (citation omitted), he manifestly has availed himself of the privilege of conducting business there...." In the case *sub judice*, it is clear that the defendants, through their relationship as general partners of the limited partnership of which plaintiff was a limited partner, have created a continuing obligation between themselves and a resident of Michigan.

Finally, in *Wallace v. Frank, supra*, the court stated that "[r]equiring the limited partner and *its general partner* to account for their conduct in Michigan does not offend 'traditional notions of justice and fair play.'" *Wallace*, 662 F.Supp. at 880. Accordingly, the court holds that a finding of personal jurisdiction comports with standards of fair play and substantial justice. (For a list of factors involved in the fair play/substantial justice determination *see, Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980).)

In light of the foregoing, it is clear that the general partners in Oakbrook purposefully marketed their product in Michigan and provided channels for regular advice to limited partners in Michigan. The general partners made an intentional decision to sell the limited partnership interests in Michigan pursuant to the marketing system which they had devised. Because the sale of the limited partnership interest in Michigan was not simply an isolated occurrence, and because the general partners, who are solely responsible for operating the business of the limited partnership, accepted plaintiff's application for a limited partnership interest, this court's assertion of personal jurisdiction over the general partners will not result in a denial of due process.

The decision in *Wallace v. Frank, supra*, is directly on point. The plaintiffs in *Wallace, supra*, limited partners in a Pennsylvania partnership, brought an action against the general partner and the partnership alleging securities fraud. As in the present case, the general partner denied any relationship with Michigan, and moved for a dismissal pursuant to Fed. R.Civ.P. 12(b)(2). United States District Judge Cohn denied the motion, holding that the acts of the general partner and the partnership in causing investment brochures and offers of rescission to be sent to plaintiffs in Michigan were subject to the jurisdiction of the federal court in Michigan and that requiring the general partner

and partnership to defend in Michigan did not violate due process:

> While Rosenkranz (the general partner) and The Rosenkranz Group (the limited partnership) heavily rely on the fact that a California law firm, not the limited partnership, actually sent the investment and rescission papers to plaintiffs in Michigan, placing substance over form, the mailing was done on behalf of The Rosenkranz Group and clearly for its benefit.
>
> The court is satisfied that a limited partnership and its general partner, which cause to be sent into Michigan an allegedly fraudulent and misleading private placement memorandum, an offer of rescission and fraudulently prepared financial papers are also subject to the long-arm jurisdiction of federal court in Michigan.

> \* \* \* \* \* \*

While Rosenkranz and The Rosenkranz Group also summarily deny any relationship with Michigan, they nonetheless sent, or caused to be sent, to plaintiffs in Michigan a private placement memorandum, an offer of rescission and various other letters with attached financial papers. They concede that the California law firm mailed "offers of rescission and brochures to the investors of Dearborn Associates." (Motion to Dismiss, par. 17). The Rosenkranz Group did not actually solicit plaintiffs' investment in Dearborn Associates from which plaintiffs' interest was transferred to The Rosenkranz Group. However, The Rosenkranz Group effectively solicited the retention of plaintiffs' investment in the Pennsylvania limited partnership.

This is enough. Rosenkranz and The Rosenkranz Group were on clear notice that investment brochures and offers of rescission were being sent on their behalf to plaintiffs in Michigan and that plaintiffs would rely on these papers in deciding whether to continue as limited partners in The Rosenkranz Group. If the information contained in the investment brochures was fraudulent, false or misleading, Rosenkranz, as general part-

ner, and The Rosenkranz Group are responsible to plaintiffs who were injured by their action. Plaintiffs cause of action arises directly from the contacts of Rosenkranz and The Rosenkranz Group with Michigan. Requiring the limited partnership and its general partner to account for their conduct in Michigan also does not offend "traditional notions of justice and fair play." As with Raddiss and Rosenfelt, the burden on Rosenkranz and The Rosenkranz Group is occasioned by what they caused to occur in Michigan, not because they must defend in Michigan.

As in *Wallace, supra*, the general partners are subject to the jurisdiction of this Court because they sent, or caused to be sent, to plaintiff in Michigan, through and by Thomson McKinnon Securities, Inc., their designated agent, the Oakbrook offering and related documents in order to solicit plaintiff's capital contribution. As in *Wallace*, the plaintiff, so he claims, relied upon the representations made in Michigan by the general partners and plaintiff's cause of action arises directly from the contacts made by the limited partnership and its general partners in Michigan. Requiring the general partners to defend in Michigan does not offend the traditional notions of justice and fair play.

The decision in *Wichita Federal Savings and Loan Ass'n v. Comark*, 586 F.Supp. 940 (S.D.N.Y.1984), is also on point. The plaintiffs in *Wichita Federal Savings and Loan Ass'n v. Comark*, were limited partners in a California limited partnership engaged in the business of buying and selling government securities. The limited partners filed an action against the limited partnership and its bank alleging violations of securities laws. The bank filed a third-party complaint against the general partners seeking indemnity and contribution. The general partners moved for dismissal, alleging lack of personal jurisdiction on the ground that the contracts between the limited partnership and the bank were not negotiated or executed in New York. The district court denied the motion, holding that the general partners, through the part-

nership, engaged in extensive activity in New York:

> New York case law establishes that non-resident general partners may properly be sued in the courts of this state as a result of forum activities of a partnership. See *Balogh v. Rayner–Smith*, 30 A.D.2d 788, 291 N.Y.S.2d 440 (1st Dep't 1967) (A general partner residing in Denmark held subject to personal jurisdiction on grounds that the partnership relationship was sufficient to invoke the application of CPLR 302(a)(1)).

> Accordingly, Owens and Bell are subject to suit in this court if Comark's activities are adequate to satisfy New York's long-arm statute. Construing the pleadings and affidavits in the light most favorable to the nonmoving party, see *Dixon v. Mack*, 507 F.Supp. 345, 348 (S.D.N.Y.1980), Owens and Bell are subject to the New York long-arm statute.

* * * * * *

Accordingly, Owens and Bell's contentions that the contracts with Marine were neither negotiated nor executed in New York are not controlling because Owens and Bell (through the partnership) nevertheless engaged in extensive activity in New York.

* * * * * *

The course of conduct and the specific acts of Comark together establish a foundation upon which to assert personal jurisdiction over Comark.

Since Comark is subject to New York jurisdiction it follows that Owens and Bell are also subject to the jurisdiction.

As in *Wichita Federal Savings and Loan Ass'n v. Comark, supra,* The Oakbrook Limited Partnership is clearly subject to this court's jurisdiction. So too are the general partners therein, who, in reality, are the limited partnership. As in *Wichita Federal Savings and Loan Ass'n v. Comark, supra,* the general partners' contentions that plaintiff's application was not accepted in Michigan are not controlling.[1]

See also *Lanier v. American Board of Endodontics,* 843 F.2d 901 (6th Cir.1988), *Michigan National Bank v. Quality Dinnette, Inc.,* 888 F.2d 462 (6th Cir.1989), *Poyner v. Erma Werke GMBH,* 618 F.2d 1186 (6th Cir.1980), *Bonelli v. Volkswagen of America, Inc.,* 166 Mich.App. 483, 421 N.W.2d 213 (1988), *Lazzaro v. Charlevoix Lakes,* 108 Mich.App. 120, 310 N.W.2d 295 (1981).

As in the above cases, the general partners purposely availed themselves of the privilege of conducting activities in Michigan. This court's assertion of jurisdiction over the Wilbur defendants will not offend the notion of fair play or substantial justice. The Wilbur defendants should not be able to evade this court's jurisdiction by exalting form over substance. Therefore,

---

**1.** The case cited by defendants, *Witbeck v. Bill Cody's Ranch Inn,* 428 Mich. 659, 411 N.W.2d 439 (1987), is distinguishable. In *Witbeck,* the plaintiff decided to vacation at the defendant's ranch in Wyoming after reading materials provided them by the American Automobile Association (AAA). Mr. Witbeck called the ranch in Wyoming and made reservations. While at the defendant's ranch, the plaintiff's daughter fell off a horse and severely injured herself.

Mr. Witbeck sued Bill Cody's Ranch Inn in Wayne County Circuit Court. The defendant asserted a lack of personal jurisdiction. The Michigan Supreme Court agreed with the defendant, but made special note that "the ranch had no specific marketing plan aimed at prospective customers in Michigan." *Id.* at 670, 411 N.W.2d 439. In the instant case, the Oakbrook brochure made special mention and disclaimers aimed at "Michigan Residents Only." Plaintiff's Supplemental Response Brief, Ex. E at v.

Further, the Michigan Supreme Court stated that "there were no extensive negotiations between the parties in Michigan...." *Id.* at 671, 411 N.W.2d 439. Plaintiff and the defendants' agent thoroughly negotiated the deal in Michigan.

Finally, the court found that "[t]here is no evidence that ... the ranch made regular contact through a salesperson or agent located in Michigan." *Id.* at 672, 411 N.W.2d 439. AAA was not found to be an agent of Bill Cody's Ranch Inn. *Id.* at 672 n. 7, 411 N.W.2d 439. Here, E. Packer Wilbur and E.P.W. Properties, Inc. made numerous contacts through their agent Thomson McKinnon Securities, Inc. to prospective and actual buyers in Michigan, one being plaintiff himself.

As *Witbeck* is distinguishable, defendants' reliance is misplaced.

this court must deny the general partners' motion to dismiss.

In an attempt to avoid the jurisdiction of this court, the general partners allege that Thomson McKinnon was the Michigan agent for The Crossings at Oakbrook Limited Partnership, but not the agent of the general partners. In so contending these defendants ignore the reality that the limited partnership can only act through its general partners.

■ In *Van Pelt v. Paull*, 6 Mich.App. 618, 624, 150 N.W.2d 185 (1967), the Michigan Court of Appeals held that the test for determining the existence of an agency relationship is the right to control:

> Generally speaking, the test of principal and agent is the right to control. It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and a servant or agent. *Tuttle v. Embury–Martin Lumber Co.*, (1916), 192 Mich. 385 [158 N.W. 875].

See also, *Birou v. Thompson–Brown Company*, 67 Mich.App. 502, 241 N.W.2d 265 (1976).

A review of the Broker–Dealer Distribution Agreement dated October 5, 1985, makes clear that Thomson McKinnon was the agent of Oakbrook limited partnership and of its general partners. The Crossings at Oakbrook Limited Partnership was organized by the general partners. E. Packer Wilbur and E.P.W. Properties, Inc. are the general partners who control the limited partnership.

Under the Broker–Dealer Distribution Agreement, E.Packer Wilbur and E.P.W. Properties, Inc. expressly agreed as follows:

> This Agreement has been duly authorized, executed and delivered by the General Partner for itself and on behalf of the partnership and represents a legal, valid and binding agreement of the General Partner and the Partnership...."
> (Broker–Dealer Distribution Agreement, p. 3 attached to 4/26/91 affidavit of Anne R. Jackson as Exhibit A).

The Broker–Dealer Distribution Agreement expressly provides that other than those jurisdictions listed in Exhibit C to the agreement, Thomson McKinnon shall advise the general partners of each jurisdiction in which Thomson McKinnon proposes to offer limited partnership units for sale prior to making any such offer, and that Thomson McKinnon shall refrain from making any offer in any jurisdiction unless authorized by the general partners. (*Id.* at p. 7). Exhibit C to the Broker–Dealer Distribution Agreement lists thirty-eight states, including Michigan, and the District of Columbia, as jurisdictions in which the limited partnership interests "are intended to be offered and sold."

Thomson McKinnon expressly agreed and warranted that it would periodically notify the general partners of the jurisdictions in which the units were being or would be offered and of the status of the offering:

> (i) It will periodically notify the General Partner of the jurisdictions in which the Units are being, or will be, offered by it pursuant to the provisions of Section 3(b) of this Agreement, and will periodically notify the General Partner of the status of the offering conducted pursuant to this Agreement. (*Id.* at p. 9).

Further, the Confidential Private Placement Memorandum states that the general partners will appoint Thomson McKinnon as agent for placement of the Units and that Thomson McKinnon shall have the right to appoint other broker-dealers as additional sales agents subject to the approval of the general partners:

> *The General Partners will appoint Thomson McKinnon Securities, Inc.* ("Thomson" or the "Placement Agent") as agent for placement of the Units offered hereby on a "best efforts" basis. Thomson shall have the right to appoint other National Association of Securities Dealers, Inc. ("NASD") broker-dealers as additional sales agents, *subject to the approval of the General Partners*, and will act as representative of such agents. (Emphasis added).

■ From the foregoing, it is clear that Thomson McKinnon was the agent of Oakbrook and of its general partners for the sale of the limited partnership units in Michigan. The general partners appointed Thomson McKinnon as their agent in Michigan for the sale of the limited partnership interests. The general partners had the right to reject Thomson McKinnon's choice of sales agents. The general partners made the decision designating the jurisdictions in which Thomson McKinnon could offer the limited partnership units for sale. The general partners expressly designated Michigan as a jurisdiction "in which interests are intended to be offered and sold". Thomson McKinnon was required to keep the general partners apprised of the identity of jurisdictions in which the units were being offered and the status of the offerings. The general partners retained the right to accept or reject any subscription tendered by Thomson McKinnon.

From the foregoing, it is clear that Thomson McKinnon acted as an agent of the general partners in the sale of the limited partnership interests in Michigan. The general partners alone controlled Thomson McKinnon.

The decision in *Smith v. Jenkins*, 452 A.2d 333 (D.C.App.1982), also supports a finding that Thomson McKinnon was the general partner's agent in Michigan. In *Smith, supra,* three general partners formed a limited partnership to acquire title to real property for development and investment. Bounds, one of the general partners, made representations to the plaintiff limited partners regarding the purchase price of the property. In an action for fraud, breaches of fiduciary duties, conversion and conspiracy against the general partners, two of the general partners moved for dismissal on the ground that they did not transact any business in the District of Columbia. The plaintiffs asserted that Bounds acted as an agent of the other general partners in making the misrepresentations. The appellate court applied the control test and held that Bounds was the other general partners' agent and

that personal jurisdiction could be asserted consistent with due process:

Thus the record reveals a degree of control by Jenkins and Esham over Bounds' action which was sufficient to establish, for jurisdictional purposes, an agency relationship between Bounds and appellees. Accordingly, we hold that the trial court's jurisdictional finding that Bounds was not an agent of appellees within the meaning of the statute was "plainly wrong and without evidence to support it."

\* \* \* \* \* \*

Thus Bounds solicited and actively pursued business activities in the District which resulted in a contract executed in the District. *In this regard we have noted that a nonresident's awareness of its agent's performance in the forum state is sufficient purposeful activity to meet due process requirements. Rose v. Silver, supra* [D.C.App., 394 A.2d 1368] 1372 n. 4. In this case the indications in the record that appellees were aware of and consented to Bounds' deliberate and voluntary activities in the District are sufficient to show that appellees purposely availed themselves of the privilege of conducting business in the District, and should reasonably have anticipated being sued in this jurisdiction. *Accordingly, we hold that appellees transacted business in the District through an agent within the meaning of § 13–423(a)(1) and that their contacts with the District are sufficient to subject them to personal jurisdiction in this forum consistent with due process.* (Emphasis added).

As in *Smith,* the general partners allegedly made representations through their agent in Michigan, Thomson McKinnon, upon which plaintiff relied to his detriment.

Thomson McKinnon was the agent of the general partners in the sale of limited partnership interests in Michigan. Thomson McKinnon received all of the offering materials from the general partners and presented the offer to plaintiff. Thomson McKinnon reviewed plaintiff's application and then forwarded it to the general part-

ners who alone had the authority to accept or reject it.

The general partners seek to avoid the personal jurisdiction of this court on the ground that, although The Crossings at Oakbrook Limited Partnership has contact with Michigan, and although Thomson McKinnon was the agent of the limited partnership, the general partners did not have any contact with Michigan. This fallacious argument must be rejected, since in fact and in law the general partners are the limited partnership. They formed and controlled the limited partnership, they hired Thomson McKinnon as their agent to solicit limited partnership interests in Michigan, they expressly selected Michigan as a jurisdiction in which to offer the limited partnership interests, and they will not be denied due process by having to defend this action in Michigan.

Thus, the motion for dismissal for lack of personal jurisdiction must be denied with respect to defendants E. Packer Wilbur and E.P.W. Properties, Inc.

The motion for dismissal for lack of personal jurisdiction must be granted with respect to defendants Wilbur & Company, Inc. and E.P. Wilbur & Company, Inc. because those entities were not general partners in Oakbrook and there is no showing that they transacted any of the partnership's business in Michigan, nor is there any showing of any of the requisite contacts with Michigan on their part sufficient for this court to assert jurisdiction over them.

The court is somewhat perplexed as to why plaintiff elected to refrain from naming Oakbrook as a defendant, but that does not affect the ruling on this motion.

### B. Sufficiency of Service

 Defendants contend that "Rule 4 of the Federal Rules of Civil Procedure controls the manner in which service may be effected." Defendants' brief at p. 16. However, it is clear that because this action was begun in state court, the sufficiency of process is determined by Michigan Rules of Court. Defendants have not claimed that service of process was insufficient under the Michigan Rules of Court. Moreover, even if service of process was incomplete or defective prior to removal, 28 U.S.C. § 1448 provides that

In all cases removed from any State court to any district court of the United States in which any one or more of the defendant has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Accordingly, even if service were insufficient under the Michigan Rules of Court, dismissal would not be justified because the defendant could be re-served pursuant to 28 U.S.C. § 1448. Therefore, the court will deny defendants' motion to dismiss based on their claim that service is insufficient. If service is presently insufficient under Michigan court rules, plaintiff may of course proceed to effect such service.

### IV.

### *Order*

1. The motions of defendants E. Packer Wilbur and E.P.W. Properties, Inc. for dismissal of plaintiff's complaint, based upon alleged lack of jurisdiction over them, are DENIED.

2. The motions of defendants Wilbur & Company, Inc. and E.P. Wilbur & Company, Inc. for dismissal of plaintiff's complaint, based upon alleged lack of jurisdiction over them, are GRANTED.

3. The motions of defendants E. Packer Wilbur and E.P.W. Properties, Inc. for dismissal of plaintiff's complaint, on the basis of alleged lack of proper service upon them are DENIED, without prejudice.

IT IS SO ORDERED.